CONSOLIDATED DENTAL MFG. CO. v. HOLLIDAY et al.

HOLLIDAY et al. v. CONSOLIDATED DENTAL MFG. CO.

(Circuit Court, N. D. Georgia. May 19, 1904.)

No. 1,178.

1. CONTRACTS—AMBIGUITY—PAROL EVIDENCE.

Where written contracts were not only ambiguous in respect to what was stated therein, but also in respect to matters omitted, and were incomplete as to vital matters necessary to render them working contracts, it was proper to admit parol evidence to show how the contracts had been construed by the parties for a period of seven years during which they carried on business.

In Equity.

¶ 1. See Evidence, vol. 20, Cent. Dig. § 2129.

Fulton Colville, for Consolidated Dental Mfg. Co.

Major Hughes and Dorsey, Brewster & Howell, for R. A. Holliday and others.

PARDEE, Circuit Judge. After a full examination of the evidence in the case and the arguments submitted, I have concluded that the exceptions to the master's report should be overruled. In my opinion, the master has properly construed the formal written contracts between the parties in regard to the matter of expenses of the business carried on by the defendants in the so-called "branch houses," and has properly ruled the contracts to be ambiguous as to who should control and be responsible for the said expense. The contracts, as written and signed, may have embodied all that the parties thereto had then formulated and agreed to, but the nature of the business contemplated, and the actual conduct of the parties immediately following, show that neither of the parties had an idea that the agreements and responsibilities of each were all to be found within the four corners of the written contracts; and it may be well said of the said written contracts that they are not only ambiguous in respect to what is stated, but because of matters not stated, and are silent and incomplete as to vital matters necessary to render them working contracts. That this was well understood by the parties appears from the fact that almost the first letter offered by the defendants shows that immediately after the contract some working arrangements were entered into in the president's office; and the evidence shows that, besides the question of expenses, the matters of territory to be covered by business of branch houses, the fixing of trade and list prices, the maximum of goods to be consigned by complainant, the purchase and sale of goods from outside houses, and the minor questions of deposit under second contract, interest, and insurance, were all left open for agreement as occasion might arise. In this view of the case, it seems clear that the rulings of the master admitting evidence to show how, during a period of seven years, the parties had understood, construed, and carried out the contracts, were correct, and should be approved.

Considering the evidence, it is clear to my mind that the understanding between the parties from the beginning was that the services to be furnished by the defendants were to include all the expenses of handling and selling the goods furnished by the complainant. That this was the understanding and construction of the defendants clearly appears from statements in letters and accounts emanating from them. And from the showing made the presumption is strong that it would still more clearly appear from the defendants' books kept prior to 1901, which appear to have mysteriously disappeared since this litigation was begun.

As to the accounting by the master, the complainant makes no objection. From the examination I have given it, I am satisfied that it is more favorable to the defendants than they were strictly entitled to.

It is by no means clear to me that the defendants should not have been charged with some interest. If there had been opposition

thereto by the complainant, I seriously doubt whether the defendants were entitled to be credited with full amount of book accounts turned over. There were over $15,000 of them in amount, and although, by the contract, the defendants substantially guarantied them, there is a large percentage noncollectible. And it is not to be overlooked that these accounts included not only the trade price of the goods sold, but the defendants' profits. As the master has stated the account, of course the amounts of cash drawn out by the defendants after March 1, 1903, and, as appears by the cashbook, mainly, if not entirely, derived from collection of the accounts charged in full to the complainant, should be charged to the defendants.

A decree may be entered in favor of the complainant overruling all exceptions to the master's report, and approving and confirming the same, dismissing the defendants' cross-bill, and for a money judgment against the defendants for the sum of $2,360.88, with interest from 8th of May, 1903, at 7 per cent., and for all costs of suit. Complainant's original bill to be retained for settlement of receiver's accounts and compensation.